1  NICHOLAS A. BROWN (Bar No. 198210)
   nicholas.brown@weil.com
2  WEIL, GOTSHAL & MANGES LLP
   Silicon Valley Office
3  201 Redwood Shores Parkway
   Redwood Shores, CA  94065
4  Telephone: (650) 802-3000
   Facsimile: (650) 802-3100
5
   Attorneys for Defendant
6  CREE, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11

12 | BRIDGELUX, INC.,                    Case No. 5:08-mc-80029 RMW (PVT)

13 |            Plaintiff,

14 |      v.

15 | CREE, INC.,

16 |            Defendant.

17

18

19              ***OPPOSITION TO MOTION TO QUASH***

20                     Date:  April 22, 2008
                       Time:  10:00 a.m.
21
                       Date of Filing:  March 7, 2008
22                     Trial Date:  N/A

23                     *Mag. Patricia V. Trumbull*

24                     **[PUBLIC REDACTED VERSION]**

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  CREE'S SUBPOENA SEEKS APPROPRIATE, RELEVANT DOCUMENTS .............. 3

  A.  The information sought by Cree's subpoena is potentially case-dispositive ......... 3

  B.  The discovery sought by Cree is not overly broad or unduly burdensome ........... 4

III. CREE'S SUBPOENA WAS NOT SERVED TOO LATE ................................................ 6

  A.  Cree's subpoena was properly served within the fact discovery period in the underlying Texas case, and provided a reasonable time for compliance .......... 6

  B.  Cree's subpoena should not be quashed even if the Court finds it failed to allow sufficient time for compliance ..................................................................... 6

IV.  BRIDGELUX'S TECHNICAL OBJECTIONS ARE MERITLESS ................................ 7

  A.  BridgeLux prevented Cree and Lumileds from reaching an agreement on the scope and timing of the discovery requests ..................................................... 7

  B.  BridgeLux's technical Rule 45-based objections are without merit ...................... 8

V.   IT NOW APPEARS THAT THE LUMILEDS/HP INFORMATION MAY NOT BE PROPERLY PART OF THIS CASE ........................................................................... 9

VI.  BRIDGELUX'S REQUEST FOR SANCTIONS IS MERITLESS ................................ 11

VII. CONCLUSION .................................................................................................................. 11

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Del Campo v. Kennedy*,
    236 F.R.D. 454 (N.D. Cal. 2006) ................................................................................ 3

*Heat & Control, Inc. v. Hester Industrial, Inc.*,
    785 F.2d 1017 (Fed. Cir. 1986) .................................................................................. 4

*P.J. ex. rel. Jensen v. Utah*,
    247 F.R.D. 664 (D. Ut. 2007) ..................................................................................... 6

*San Francisco Bay Area Rapid Transit District V. Spencer*,
    2006 U.S. Dist. LEXIS 81677 (N.D. Cal. Oct. 23, 2006) ..................................... 6, 7, 9

*Todd v. La Marque*,
    2008 WL. 564802 (N.D. Cal. Feb. 28, 2008) ............................................................. 6

*Ultratech. V. Tamarack Scientific Co.*,
    2005 WL. 696979 (N.D. Cal. Mar. 17, 2005) ............................................................. 7

*United States v. $160,066.98 from Bank of America*,
    202 F.R.D. 624 (S.D. Cal. 2001) ................................................................................ 4

**STATUTES**

35 U.S.C. § 102(g) ................................................................................................................ 3, 4

Fed. R. Civ. P. 26(c) ............................................................................................................. 4, 5

**I.**

**INTRODUCTION**

This motion to quash relates to a patent infringement case involving LED technology. The case is pending in the Eastern District of Texas with a trial set in August, 2008. It includes patent infringement claims by BridgeLux against Cree, and patent counterclaims by Cree against BridgeLux.

This motion relates to one of BridgeLux's defenses to Cree's patent infringement claims.[1] BridgeLux argues that work done at Hewlett-Packard Company ("HP") in the late 1990s is prior art that invalidates Cree's patents. To support its argument, BridgeLux has produced a limited set of HP documents that apparently were in the possession of a BridgeLux executive, Dr. Lester. Dr. Lester used to work at HP and is the person who did the alleged prior-art work. The dates and scope of Dr. Lester's alleged prior-art work at HP are important issues in the case.

To test the basis of BridgeLux's prior-art defense, Cree served a subpoena on non-party Philips Lumileds Lighting ("Lumileds") in this district on February 27, 2008. Lumileds is an LED company that is the successor of the LED group at HP. The subpoena seeks documents that could corroborate or contradict BridgeLux's argument. This motion relates to that subpoena, which both Lumileds and BridgeLux have moved to quash.

Lumileds objects to Cree's subpoena on the grounds that it failed to provide reasonable time for compliance, and that it was overbroad. Ordinarily, Cree and Lumileds would have reached a compromise that would have mooted these objections and allowed Lumileds to provide the documents Cree needs on a mutually agreeable schedule. Indeed, Cree still expects that could be achieved. As Cree has explained to Lumileds, while the requests in the subpoena are broad, it only needs a specific set of documents – documents sufficient to show whether BridgeLux's story about what happened at HP in the late 1990s is accurate. Moreover, as described below, these documents have for the most part already been assembled and provided to counsel for Lumileds, who would merely need to have them reviewed and make them available

---

[1] Cree's patents-in-suit in the underlying case are U.S. Patent Nos. 6,614,056 and 6,885,036 (collectively the "Cree patents").

for inspection and copying.

However, BridgeLux also objected to the subpoena, on certain technical grounds and also on the basis of the schedule in the underlying Texas case, where fact discovery closed on March 10. Cree was unable to give Lumileds an extension of time to respond to the subpoena because BridgeLux refused to agree that the subpoena could be responded to after the discovery period ended on March 10. Thus, both Lumileds and BridgeLux moved to quash the subpoena on March 10.[2]

As discussed below, Cree's subpoena seeks a limited set of highly relevant documents. The burden of their production would be small compared to their likely significance in the case, where BridgeLux is attempting to present a prior-art defense based on a small set of documents its executives seems to have hand-picked from HP's files. The only reason that Cree and Lumileds are before the court is because BridgeLux is attempting to prevent Cree from obtaining discovery that might call into question the merits of its prior-art defense. And BridgeLux's only substantive objection is that Cree's subpoena was served too close to the end of the fact discovery period set by the Texas court. As discussed below, this is an objection that should be addressed to the Texas court, which should decide issues relating to the management of its docket, such as scheduling and related sanctions. This court's exercise of jurisdiction over this subpoena should be limited to protecting the rights of Lumileds, the resident of this district, and ensuring that Lumileds provides a reasonable set of documents on a reasonable schedule.

Finally, another related issue has emerged between the filing of the motions to quash and the filing of this opposition. Lumileds has determined that some of the documents BridgeLux produced to support its defense—invention disclosures prepared by Dr. Lester—are confidential attorney-client privileged documents. On March 28 Lumileds demanded the return or destruction of these documents, and of related information such as testimony about those documents. This issue did not arise earlier because BridgeLux's Dr. Lester testified that these

---

[2] Lumileds moved to quash in the San Jose Division. BridgeLux moved to quash in the San Francisco Division. Cree is filing an identical brief in response to both motions in both San Jose and San Francisco. Cree requests that the two motions to quash be consolidated and heard by the same judge, because the issues are essentially the same.

documents were public documents. Lumileds plainly believes otherwise. As of this writing, it is unclear whether any of the documents produced by BridgeLux were properly obtained, and what impact this will have on the underlying case. Obviously, if BridgeLux decides to abandon its HP-based prior art defense, Cree would not have any need for the documents it has subpoenaed. And on the flip side, if it turns out that the HP documents which BridgeLux produced were not properly in its possession, then they could only legitimately enter this case through a subpoena to Lumileds. In that case BridgeLux can hardly be heard to complain about timeliness of the only subpoena that has been served on Lumileds in this case.

## II.

## CREE'S SUBPOENA SEEKS APPROPRIATE, RELEVANT DOCUMENTS

The Federal Rules of Civil Procedure permit liberal discovery. While Rule 45 governs the discovery from non-parties by subpoena, and the proper scope of such discovery is specified in Rule 26(b)(1). *Del Campo v. Kennedy*, 236 F.R.D. 454, 457 (N.D. Cal. 2006). Under Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Del Campo*, 236 F.R.D. 454, 457.

### A.    The information sought by Cree's subpoena is potentially case-dispositive.

The discovery that Cree seeks is highly relevant to BridgeLux's allegations that the HP documents invalidate Cree's patents. The Cree patents were conceived and reduced to practice in June, 1998. BridgeLux alleges that Dr. Lester conceived the same subject matter first—in            . If it is true that Dr. Lester was the first to conceive of the subject matter claimed in Cree's patents, and if it is also true that Dr. Lester's work on was not "abandoned, suppressed, or concealed," Cree's patents would be invalid under 35 U.S.C. § 102(g).

The basis for BridgeLux's § 102(g) defense is a limited set of HP documents that allegedly corroborate Steve Lester's prior-art work at HP. Some of these documents are                            . The dates on these                are critical to the merits of BridgeLux's defense. However, the copies            that BridgeLux produced have partially unintelligible dates. It is unclear whether the date on one particular                                    .

1   *See* Conf. Brown Decl. Ex 1 [BLTX-800-801].  Clarifying this single ambiguity—whether the

2   date of                              —could easily be done in minutes, and could determine whether

3   the alleged work at HP was done before or after Cree's work.  This could potentially determine

4   the outcome of the underlying case.

5           The documents sought by Cree's subpoena are also important for other reasons.

6   For example, BridgeLux needs to prove that the alleged prior-art work was not "abandoned,

7   suppressed, or concealed."  35 U.S.C. § 102(g).  The documents that Cree seeks—laboratory

8   notebooks, test reports, or prototypes—are relevant to show the continuity of the work allegedly

9   performed at HP between                     and November 20, 1998, when a patent application was

10  filed relating to Dr. Lester's work.

11          The documents sought by Cree's subpoena could also show which, if any, of the

12  inventions claimed in Cree's patents were performed at HP.  The HP documents that BridgeLux

13  produced do not shed much light on this.  For example, one of the claims of the Cree patents

14  requires "interdigitated" electrodes or conductive fingers.  However, the electrode structure of the

15  HP LEDs are unintelligible from what BridgeLux's has produced.  Similarly, BridgeLux's

16  production of HP documents included

17                      .  *See* Conf. Brown Decl. Ex. 2 [BLTX 743 and BLTX 747].  However,

18  there is no connection between                                                          .  Indeed, Dr.

19  Lester testified that he could not

20

21  *See* Conf. Brown Decl. Ex. 3 [Lester Depo.] at 234:3 – 236:3.  The documents sought by Cree's

22  subpoena could clarify all this.

23      **B.**    **The discovery sought by Cree is not overly broad or unduly burdensome**

24          "The burden of proving that a subpoena is oppressive is on the party moving to

25  quash and is a heavy one."  *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed.

26  Cir. 1986).  "Only 'undue burden or expense' provides a potential basis for relief from legitimate

27  discovery demands.  '[U]ndue' burden requires parties to show more than expense or difficulty."

28  *United States v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 628 (S.D. Cal. 2001) (citing Fed.

1  R. Civ. P. 26(c) (emphasis added)).

2          Here, Dr. Lester has testified that

9                                                                                  *Id.* at 95.  Dr. Lester also

10 apparently received a copy of some subset of these documents, which he took with him to

11 BridgeLux and which were produced in this litigation.

12          The documents that

13          Given the potential significance of these documents in the underlying case, and the

14 fact that they have already been collected and provided to Lumileds' counsel or its CEO,

15 production of these documents is reasonable.

16          The topics in the subpoena served by Cree are broader than this, because Cree

17 cannot be certain what pertinent documents are in Lumileds' possession, and does not want to

18 forego obtaining them because it failed to draft broad enough requests.  However, Cree has never

19 expected Lumileds to produce more than what is reasonably available.  The work in question

20 occurred almost a decade ago, and if documents related to it were not preserved in some

21 organized fashion, they are unlikely to be found now.  Since it appears from Dr. Lester's

22 testimony t

23                                                                                   it is likely that

24 Lumileds has a file or set of documents somewhere as a result of that project.  Production of

25 whatever collection of documents Lumileds has already gathered—along with anything else

26 related that is reasonably available, even if it is not strictly part of the same "collection"—is also

27 appropriate under the circumstances here.  For example, if like many technology companies

28 Lumileds maintains an archive of lab notebooks, it would be reasonable for Lumileds to search

that archive for Dr. Lester's notebooks from the late 1990s.

## III.

## CREE'S SUBPOENA WAS NOT SERVED TOO LATE

### A. Cree's subpoena was properly served within the fact discovery period in the underlying Texas case, and provided a reasonable time for compliance

"Service of subpoenas at least 10 days before the deposition or production is customary, but not mandatory." *San Francisco Bay Area Rapid Transit Dist. V. Spencer*, 2006 U.S. Dist. LEXIS 81677 (N.D. Cal. Oct. 23, 2006) (quoting Schwarzer, Tashime & Wagstaffe, Fed. Civ. Pro. Before Trial (The Rutter Group 2006) § 11:2276).

Cree's subpoena was served on February 27. This was twelve days before the fact discovery cutoff set by the Texas court. It requested production on March 3, five days after service, and a deposition on March 10, twelve days after service. Cree agreed to move the document production return date to March 10, and would have extended the return date further if BridgeLux had not objected. Having been served 12 days before the fact discovery cutoff, Cree's subpoena was not untimely. *See also, e.g.*, *P.J. ex. rel. Jensen v. Utah*, 247 F.R.D 664, 677 (D. Ut. 2007) (denying a motion to quash subpoena served six days after the discovery deadline).

The larger context of discovery in the underlying case confirms that this timing was reasonable. Cree deposed Dr. Lester on January 15, 2007. Within a few weeks of that deposition, Cree approached Lumileds informally in an effort to obtain the documents sought by the subpoena. After some back and forth, Lumileds retained outside counsel and told Cree it would need to pursue the documents through the formal mechanism of a subpoena. Cree then drafted the subpoena at issue here and served it a few weeks later. Thus, Lumileds knew the February 27 subpoena was coming, and knew what it was about, well before it was served.

### B. Cree's subpoena should not be quashed even if the Court finds it failed to allow sufficient time for compliance

Even in the event that the court finds that Cree's subpoena did not provide reasonable time for compliance, the proper remedy is a modification of the subpoena to provide more time – not to quash it. *See Todd v. La Marque*, 2008 WL 564802, *1 (N.D. Cal. Feb. 28,

1   2008) (modifying the date of compliance with subpoena's document requests).

2         For Cree, the precise date of production has never been a problem. By the time
3   this motion is resolved, it will be almost two months after the subpoena was served. A production
4   date within 30 or 45 days of any order on this motion would be sufficient for Cree—and that
5   would be three months or more after the subpoena was served.

6         Rather, the central issues for Cree are (a) whether documents will be produced,
7   and if so, (b) whether the Texas court will allow use of those documents. Cree was unwilling to
8   extend the return date of the subpoena beyond March 10 without BridgeLux's consent for fear
9   that BridgeLux would then use the extension as a basis for demanding that the Texas court
10  prevent Cree from using documents that were produced in response to the subpoena. Given the
11  motion practice here, this seems likely.

12        However, this court need not try to resolve the question of how the Texas court
13  will handle documents that were subpoenaed for production prior to the March 10 deadline, but
14  not received until after that deadline. All this court needs to decide is whether Cree's subpoena
15  should be quashed entirely because it was served only 12 days before the March 10 return date. It
16  should not, because the documents Cree seeks are potentially very important, and because Cree is
17  seeking production of documents that likely have already been collected and/or indexed.

18        The law cited by BridgeLux does not suggest otherwise. BridgeLux relies
19  primarily on *Ultratech. V. Tamarack Scientific Co.*, 2005 WL 696979, *1 (N.D. Cal. Mar. 17,
20  2005). In *Ultratech*, the time provided for compliance was six days, half the time for compliance
21  provided by Cree's subpoena. BridgeLux also cites *San Francisco Bay Area Rapid Transit Dist.*
22  *V. Spencer*, 2006 U.S. Dist. LEXIS 81677 (N.D. Cal. Oct. 23, 2006). This case refused to quash a
23  subpoena that demanded production seven days from when it was served, again less time than
24  Cree allowed for Lumileds.

25        Accordingly, the Court should reject BridgeLux's arguments about timeliness,
26  compel production within 30 to 45 days of its order, and leave to the Texas court the question of
27  how the documents will be handled in the underlying case.

28

OPPOSITION TO MOTION TO QUASH
SV1:\291516\01\68x_01!.DOC\39603.0015         7                    Case No. 5:08-mc-80029 RMW (PVT)

## IV.

## BRIDGELUX'S TECHNICAL OBJECTIONS ARE MERITLESS

### A. BridgeLux prevented Cree and Lumileds from reaching an agreement on the scope and timing of the discovery requests

Cree expects that it could have reached agreement with Lumileds about the timing and scope of Lumileds' response to the subpoena if BridgeLux had not intervened. As described above, the documents Cree seeks are potentially very important, and Cree is seeking production of documents that likely have already been collected and/or indexed. Cree's counsel informed Lumileds that Cree was willing to extend the compliance date for the subpoena, subject to BridgeLux consent to allowing the discovery to proceed after the Texas discovery deadline of March 10. *See* Brown Decl. Ex. A [S. Stimpson email to Jayne Laiprasert of March. 6].

However, BridgeLux refused, insisting that the subpoena was technically defective, and then filed a motion to quash. *See* Brown Decl. Ex. B [S. Stimpson email confirming BridgeLux's refusal].

### B. BridgeLux's technical Rule 45-based objections are without merit

BridgeLux makes four technical objections to Cree's subpoena, each of which should be rejected as meritless and/or moot.

BridgeLux's technical objections are moot because, promptly after learning of them, in an effort to avoid petty dispute, Cree served a second subpoena that corrected each alleged technical deficiencies that are discussed below.

BridgeLux's technical objections are also meritless. BridgeLux's first technical objection is that the subpoena failed to state that the *BridgeLux v. Cree* action was pending in the Eastern District of Texas, in violation of Rule 45(a)(1)(B), which requires a subpoena to state the "name of the court in which [the action] is pending." BridgeLux does not argue that this clerical error on the subpoena caused any confusion or prejudice to anyone, nor does it provide any authority for quashing a subpoena on this basis. Cree promptly corrected this clerical error upon learning of it.

BridgeLux's second technical objection is that Cree failed to meet and confer

about scheduling the deposition. This is unfair. Both Cree and BridgeLux noticed a number of depositions at the close of the discovery period, many without advance agreement on date and time. They have been negotiating about potential dates ever since. Cree sought to negotiate the return date of the subpoena with BridgeLux, but BridgeLux insisted that the subpoena was defective and that it would not agree to extend the return date past March 10. In any event, this objection is moot because if the Court requires compliance with the subpoena within 30 or 45 days of the order, BridgeLux, Lumileds, and Cree will have ample opportunity to choose a mutually agreeable date.

BridgeLux's third technical objection is that the subpoena should be quashed because it was served the day before Cree gave BridgeLux notice of the subpoena. BridgeLux argues this violates Rule 45(b)(1) requirement that the party issuing the subpoena serve "prior notice" on each party in the action. The Rule does not say that the notice must be prior to *service*, it merely requires "prior notice." Moreover, the very case that BridgeLux relies on for this argument rejected BridgeLux's argument, refusing to quash a subpoena that was served before notice of it was given to the other side. *San Francisco Bay Area Rapid Transit Dist. V. Spencer*, 2006 U.S. Dist. LEXIS 81677 (N.D. Cal. Oct. 23, 2006). The Advisory Committee notes to the Rules of Civil Procedure state the purpose of Rule 45's prior notice requirement is to afford the other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. *See* F.R.C.P. 45 committee note, 1991 amendments. That purpose has been served. The fact that Cree provided notice to BridgeLux the day after it served the subpoena is not reason to quash the subpoena.

BridgeLux's fourth and final technical objection is that Cree failed to serve proper notices of deposition because, while it stated a *date* for the deposition, it failed to state a *time*, and failed to state the method by which the deposition would be recorded. Again, BridgeLux does not argue that these deficiencies caused any confusion or prejudice to anyone, nor does it provide any authority for quashing a subpoena on this basis. In any event, this objection is moot because if the Court requires compliance with the subpoena within 30 or 45 days of the order, BridgeLux, Lumileds, and Cree will have ample opportunity to choose a mutually agreeable date and *time* for

OPPOSITION TO MOTION TO QUASH
SV1:\291516\01\68x_01!.DOC\39603.0015            9            Case No. 5:08-mc-80029 RMW (PVT)

1  the deposition.

2          In sum, BridgeLux's series of technical objections—which are all now moot—do

3  not justify quashing the subpoena.

4  **V.**

5  **IT NOW APPEARS THAT THE LUMILEDS/HP INFORMATION MAY NOT BE PROPERLY PART OF THIS CASE**

6  

7          Finally, another related issue has emerged between the filing of the motions to

8  quash and the filing of this opposition. Lumileds has determined that some of the documents

9  BridgeLux produced to support its defense—invention disclosures prepared by Dr. Lester—are

10 confidential attorney-client privileged documents. On March 28 Lumileds demanded the return

11 or destruction of these documents, and of related information such as testimony about those

12 documents. *See* Brown Decl. Ex. C_ [Letter from M. Lyons to C. Bunsow and D. Radulescu].

13         This issue did not arise earlier because BridgeLux apparently believed that these

14 documents were not confidential. Dr. Lester testified t

15

16

17

18

19         [3]

20         Lumileds plainly believes otherwise. Indeed, as of this writing, it is unclear

21 whether *any* of the HP documents produced by BridgeLux were properly obtained and produced,

22 and what impact this will have on the underlying case. Obviously, if BridgeLux decides to

23 abandon its HP-based prior art defense, Cree would not have any need for the documents it has

24 subpoenaed.

25         On the flip side, if it turns out that the HP documents which BridgeLux produced

26 ---

27 [3] Heng Liu – BridgeLux's Founder and CTO – was asked i

28         *Id.*

were not properly in its possession, then they could only legitimately enter this case through a subpoena to Lumileds. In that case BridgeLux can hardly be heard to complain about timeliness of the only subpoena that has been served on Lumileds in this case.

Indeed, resolving its concerns about whether BridgeLux had properly obtained and used Lumileds' documents in this case was one of the purposes of Cree's subpoena, which included a request directed to the potential confidentiality status of the documents. As Cree's counsel stated in an email to BridgeLux, "[t]o the extent that BridgeLux will withdraw its reliance in this case on confidential HP documents Dr. Lester obtained from Lumileds/HP, we would be willing to reconsider the need for the subpoena altogether." *See* Brown Decl. Ex. D, (email from D.Radulescu to Aaron Myers).

## VI.

## BRIDGELUX'S REQUEST FOR SANCTIONS IS MERITLESS.

BridgeLux's request for sanctions is meritless and is based on a distorted characterization of the facts. On March 6 – the day before BridgeLux filed its motion to quash – Cree and BridgeLux were scheduled to meet and confer on further depositions that each party believed it needed to take after the discovery cut-off. Less than an hour before the scheduled Meet and Confer, counsel for BridgeLux sent an email to counsel for Cree stating BridgeLux was unavailable. *See* Brown Decl. Ex. E (email from Jayne Laiprasert to David Radulescu and Ryan Owens). Although BridgeLux stated in the email that it would follow up with an update on their availability later that evening, it never did. Cree attorney David Radulescu attempted to contact BridgeLux's lead counsel later that evening in a last ditch effort to avoid motion practice, asking Mr. Cherian to call him. *See* Brown Decl. Ex. F [email from D. Radulescu to K.T. Cherian]. Despite these efforts to negotiate, BridgeLux made it clear to Cree that the only acceptable solution for BridgeLux was Cree's voluntary withdrawal of the subpoena. This unreasonable position was not acceptable to Cree, and Cree's refusal to withdraw its subpoena is not a proper basis to award sanctions.

# VII.

# CONCLUSION

For all of the aforementioned reasons, Cree respectfully requests that the Court deny Lumileds' and BridgeLux's motion to quash Cree's subpoena.

Dated: April 1, 2008

WEIL, GOTSHAL & MANGES LLP

By: _*/s/ Nicholas A. Brown*_
Nicholas A. Brown
Attorneys for Defendant
CREE, INC.